NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| D&R COMMUNICATIONS, LLC, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>JOHN GARETT AND GARETT GROUP, )<br>INC., )<br>)<br>Defendants. ) | Civil Action No. 11-0413 (GEB)<br>**MEMORANDUM OPINION** |

**BROWN, Chief Judge**

**I.    Background**

This matter comes before the Court upon the motion of Defendants John Garett and Garett Group, Inc. (collectively "Defendants" or "Garett") to dismiss counts I, II, and III of the Complaint filed by D&R Communications, LLC ("Plaintiff" or "D&R") for lack of subject matter jurisdiction.  (Doc. No. 25).  The Court has considered the parties' submissions and decided the matter without oral argument pursuant to Federal Rule of Civil Procedure 78, and for the reasons discussed below, denies Defendants' motion to dismiss.

**A.    Facts**

Plaintiff D&R and Defendants Garrett Group, Inc. had a business relationship lasting about eight months.  In February 2009, Plaintiff D&R hired Defendant Garett, through Garett Group, Inc., as an independent contractor to generate business for D&R's Rx Health*Advantage*

program, which included a patient starter kit, "a device and method for packaging pharmaceutical product samples together with patient drug and disease state information, literature and other forms of media, and related consumer products, consumer package goods, devices, or services." (*See* U.S. Patent No. 7,677,601 (the "'601 Patent" at 1:11-15); Am. Compl. ¶ 12; Doc. No. 27-2). However, their relationship went sour, and D&R and Garett terminated their consulting agreement in October 2009. (Am. Compl. ¶ 16; Doc. No. 27-2).

After Garett approached D&R's clients alleging D&R's patient starter kits infringed upon Garett's then non-existent patent, (Am. Compl. ¶ 19; Doc. No. 27-2), D&R and Garett entered into a Settlement and Release Agreement. (Am. Compl. at Ex. E; Doc. No. 27-3). In the agreement, D&R "acknowledged that it had no proprietary rights in the Rx Health*Advantage* brand name, and that Defendant Garett owned the still-pending Garett Patent Application directed to a certain type of patient starter kit." (Am. Compl. ¶ 23; Doc. No. 27-2). However, the agreement allowed D&R to continue to market other non-infringing patient starter kits. (Am. Compl. ¶ 24; Doc. No. 27-2). Garett agreed "not to assert any proprietary or exclusive rights in any patient starter kit that D&R is permitted to use or make under the terms of this Agreement and which will *not* be covered by any patent claim that may issue to Garett." (Am. Compl. at Ex. E; Doc. No. 27-3) (emphasis added). Thereafter, in March 2010, Garett obtained United States Patent No. 7,677,601, protecting certain patient starter kits and methods recited by 15 patent claims. (Am. Compl. ¶¶ 18, 30; Doc. No. 27-2).

However, Garett again began approaching D&R's clients alleging possible patent infringement. In January 2011, Garett sent letters to at least two of D&R's clients, ALCON Laboratories, Inc. and DUSA Pharmaceuticals (collectively, the "Clients"), (Am. Compl. ¶19), stating that the Clients "may be using a service and product, provided by D&R . . . that violates

[Garett's] Intellectual Property for a "Patient Kit" and US Patent No. 7,677,601, as of March, 2010." (Compl. at Ex. G; Doc. No. 1-2). The Clients informed D&R of these letters because D&R agreed to indemnify its Clients for any patent infringement claims arising from the commercial use of D&R patient kits. (Am. Compl. ¶ 35; Doc. No. 27-2). To put the dispute to rest, D&R filed a declaratory judgment action alleging it did not infringe the patent as well as other affirmative claims.

  B.  **Procedural History**

  Plaintiff commenced this action on January 21, 2011. Defendants filed the motions to dismiss counts I, II, and III for lack of subject matter jurisdiction and counts IV-X for failure to state a claim on April 8, 2011. Plaintiff then filed a brief in opposition to Defendant's motions to dismiss as well as a cross motion to amend the complaint on May 23, 2011. Defendants filed a reply brief in support of the motions to dismiss and in response to Plaintiff's cross motion to amend its complaint on May 31, 2011. This opinion involves only the motion to dismiss based on subject matter jurisdiction.

**II.**  **Discussion**

  A.  **Motion to Dismiss**

    1.  **Subject Matter Jurisdiction**

  Federal Rule of Civil Procedure 12 provides that a challenge to subject matter jurisdiction may be asserted by a motion to dismiss. FED. R. CIV. P. 12(b)(1).

  In *Mortensen v. First Federal Savings & Loan Ass'n*, 549 F.2d 884 (3d Cir. 1977), the Third Circuit divided Rule 12(b)(1) motions into two categories: facial and factual. *Id.* at 891. A facial attack on jurisdiction is directed to the sufficiency of the pleading as a basis for subject matter jurisdiction. "In reviewing a facial attack, the court must only consider the allegations of

the complaint and documents referenced therein and attached thereto in the light most favorable to the [p]laintiff." *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).  In a factual attack on jurisdiction under 12(b)(1), however, the movant calls into question the essential facts underlying a claim of subject matter jurisdiction.  "Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction[,] its very power to hear the case[,] . . . the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case."  *Mortensen* 549 F.2d at 891; *see also Carpet Group Int'l v. Oriental Rug Importers Ass'n, Inc.*, 227 F.3d 62, 69 (3d Cir. 2000).  Under this standard, no presumptive truthfulness attaches to a plaintiff's allegations of jurisdictional facts.  *Robinson v. Dalton*, 107 F.3d 1018, 1021 (3d Cir. 1997) (citing *Mortensen*, 549 F.2d at 891).  Therefore, in a 12(b)(1) factual challenge, a court may consult material outside the pleadings, and the burden of proving jurisdiction lies with the plaintiff.  *Gould Elecs.*, 220 F.3d at 178.  "In general, when a Rule 12(b)(1) motion is supported by a sworn statement of facts, the court should treat the [d]efendant's challenge as a factual attack on jurisdiction."  *Med. Soc'y of N.J. v. Herr*, 191 F. Supp. 2d 574, 578 (D.N.J. 2002) (citing *Int'l Ass'n of Machinists & Aerospace Workers v. Northwest Airlines*, 673 F.2d 700, 711 (3d Cir. 1982)).

### a.     Declaratory Judgment Act

Plaintiff asserts that the Court has subject matter jurisdiction over this case pursuant to the Federal Declaratory Judgment Act, (Am. Compl. ¶ 8; Doc. No. 27-2), which provides that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a); (Defs.' Br. at 1-2; Doc. No. 25).  "A party seeking to base jurisdiction on the Declaratory Judgment Act bears the burden

4

of proving that the facts alleged, 'under all the circumstances, show that there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1343 (Fed. Cir. 2007) (citations omitted). "The burden is on the party claiming declaratory judgment jurisdiction to establish that such jurisdiction existed at the time the claim for declaratory relief was filed and that it has continued since." *Id.* at 1344 (citing *Steffel v. Thompson*, 415 U.S. 452, 459 n.10 (1974)). "[O]nce that burden has been met, absent further information, that jurisdiction continues. The burden of bringing forth such further information may logically rest with the party challenging jurisdiction, but the actual burden of proof remains with the party seeking to invoke jurisdiction." *Id.* at 1344-45 (internal citations omitted). A case or controversy "must be extant at all stages of review, not merely at the time the complaint [was] filed." *Id.* at 1345 (quoting *Steffel*, 415 U.S. at 459 n.10). In patent cases, the existence of a "case or controversy must be evaluated on a claim-by-claim basis." *Jervis B. Webb Co. v. Southern Systems, Inc.*, 742 F.2d 1388, 1399 (Fed. Cir. 1984).

Courts previously used a two-pronged test to determine whether an actual controversy existed in patent declaratory judgment actions. Under the old test, a plaintiff had to establish that: (1) it had actually produced or was prepared to produce an allegedly infringing product and (2) the defendant's conduct created an objectively "reasonable apprehension" that the defendant would initiate suit if the plaintiff continued the allegedly infringing activity. *Sony Elecs., Inc. v. Guardian Media Techs., Ltd.*, 497 F.3d 1271, 1283 (Fed. Cir. 2007); *see also Teva Pharm. USA, Inc. v. Novartis Pharm. Corp.*, 482 F.3d 1330, 1334-36 (Fed. Cir. 2007). However, in *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007), the United States Supreme Court rejected this "reasonable apprehension" test, noting that it conflicted with the Court's precedent.

5

*Id.* at 132 n.11. The Court then held that there is no bright-line rule for distinguishing cases that satisfy the actual controversy requirement from those that do not; instead what is required is:

> that the dispute be definite and concrete, touching the legal relations of parties having adverse legal interests; and that it be real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

*Id.* at 127 (internal citations and quotations omitted). As such, the Court adopted an "all the circumstances" test, stating that the "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* "[F]ollowing *MedImmune*, proving a reasonable apprehension of suit is one of multiple ways that a declaratory judgment plaintiff can satisfy the more general all-the-circumstances test to establish that an action presents a justiciable Article III controversy." *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1336 (Fed. Cir. 2008) (citing *Caraco Pharm. Labs., Ltd. v. Forest Labs, Ltd.*, 527 F.3d 1278, 1291 (Fed. Cir. 2008)).

"[T]he Supreme Court has emphasized that a fear of future harm that is only subjective is not an injury or threat of injury caused by the Defendant that can be the basis of an Article III case or controversy." *Prasco*, 537 F.3d at 1338-39 (citing *Los Angeles v. Lyons*, 461 U.S. 95 (1983)); *see also Indium Corp. of Am. v. Semi-Alloys, Inc.*, 781 F.2d 879, 883 (Fed. Cir. 1985) ("A purely subjective apprehension of an infringement suit is insufficient to satisfy the actual controversy requirement."). Instead, "it is the reality of the threat of . . . injury that is relevant to the standing inquiry, not the Plaintiff's subjective apprehensions." *Id.* (citing *Lyons*, 461 U.S. at 107 n.8; *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972)). As such, "jurisdiction generally will not arise merely on the basis that a party learns of the existence of a patent owned by another or even

perceives such a patent to pose a risk of infringement, without some affirmative act by the patentee." *Id.* (citing *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1380-81 (Fed. Cir. 2007)).

The Federal Circuit Court of Appeals has adopted this "all the circumstances" test. *Teva Pharm.*, 482 F.3d at 1339 ("we follow *MedImmune*'s teaching to look at 'all the circumstances' … to determine whether [plaintiff] has a justiciable Article III controversy"); *SanDisk* 480 F.3d at 1381 ("Article III jurisdiction may be met where the patentee takes a position that puts the declaratory judgment Plaintiff in the position of either pursuing arguably illegal behavior or abandoning that which he claims a right to do.").

### b.  Plaintiff Has Asserted Facts Sufficient to Establish Subject Matter Jurisdiction Under the Declaratory Judgment Act

Defendants argue that Plaintiff has failed to allege facts sufficient to establish there is an Article III case or controversy between Defendants and Plaintiff sufficient to warrant issuance of a declaratory judgment. (Defs.' Br. at 3-6; Doc. No. 25). Plaintiff argues that Garett's activities, including their letters to D&R's Clients, constitute an assertion of Defendants' patent rights, which "give[s] rise to a substantial controversy of immediacy and reality such that Declaratory Judgment jurisdiction is appropriate and necessary." (Pl.'s Br. at 11; Doc. No. 27).

In these letters, Defendants state that they believe the Clients may have "violate[d] my Intellectual Property for a 'Patient Kit' and US Patent No. 7,677,601" and "[t]he [D&R] product and services may be in violation of my patent." (Compl. at Ex. G; Doc. No. 1-2). Defendants also assert that D&R's role in this patent infringement is willful, stating that "D&R is and was aware of my US Patent for a patient support kit or Patient Kit . . . . D&R received a 'close-up' view of my invention and how it works." (Compl. at Ex. G; Doc. No. 1-2). Additionally, Defendants declare that:

7

> D&R is not authorized and was never given permission to promote nor granted the use in whole or in part of my invention at any time. Currently, Garett Group, Inc. has a legal agreement in place with D&R restricting and preventing them from engaging in promoting, executing and performing services in exchange for compensation that relate to my patented Patient Kit invention. Their contract with ALCON should reflect this restriction.

(Compl. at Ex. G; Doc. No. 1-2). Defendants also impose a deadline for response from the Clients and note that their patent counsel has received a copy of the communication. (Compl. at Ex. G; Doc. No. 1-2; Pl.'s Br. at 8; Doc. No. 27).

The Court concludes that Plaintiff has put forth sufficient evidence to establish subject matter jurisdiction under the Declaratory Judgment Act. The assertions in the letter that D&R may have violated Garett's patent and Intellectual Property combined with the statements that D&R knew about the invention and was unauthorized to promote or use it were at the very least an implied allegation of infringement, which leads to an actual controversy. *Prasco*, 537 F.2d at 1340 (actions implying accusation of infringement held to confer jurisdiction under Declaratory Judgment Act). Moreover, this Court has found that an e-mail stating merely that a plaintiff's product "was of initial concern for patent 7196477" was enough to establish jurisdiction because "[d]efendants caused [plaintiffs] to believe there was an infringement problem." *Int'l Dev. Corp. v. Richmond*, 2009 U.S. Dist. LEXIS 106326, at *9 (D.N.J. Nov. 13, 2009). Certainly, the outright statements that the Clients may have "violate[d] my Intellectual Property for a 'Patient Kit' and US Patent No. 7,677,601" and "[t]he [D&R] product and services may be in violation of my patent," (Compl. at Ex. G; Doc. No. 1-2), would cause D&R to believe that there was an infringement problem, even more so than a mere statement of "initial concern."

Defendants cite *Innovative Therapies, Inc. v. Kinetic Concepts*, 599 F.2d 1377 (Fed. Cir. 2010), for the proposition that representations made to third parties, standing alone, are insufficient to warrant a Declaratory Judgment Action, even if the declaratory plaintiff knew of

8

the patentee's representation. (Defs.' Reply Br. at 3; Doc. No. 28). Defendants mistake the holding of that case. In *Innovative Therapies*, the declaratory plaintiff *itself* made representations to third parties about technological characteristics that were similar to those of the defendant's protected patent. The Federal Circuit held that the plaintiffs could not unilaterally create jurisdiction by making representations to third parties absent any action by defendant asserting its patent. *Innovative Therapies*, 599 F.3d at 1380; s*ee also Sandisk*, 480 F.2d at 1381 (holding that "declaratory judgment jurisdiction generally will not arise merely on the basis that a party learns of the existence of a patent owned by another or even perceives such a patent to pose a risk of infringement, without some affirmative act by the patentee."). Here, it was not the Declaratory Plaintiff, D&R, who tried to unilaterally create jurisdiction by writing a letter suggesting infringement, but Defendants who alleged infringement of their patent. Therefore, Defendant Garett's representations in the letters sent to the Clients constitute an affirmative action, which confers subject matter jurisdiction over the counts I, II, and III of the complaint.[1]

### III. Conclusion

For the foregoing reasons, Defendants' motion to dismiss (Doc. No. 25) is DENIED. An appropriate form order is filed herewith.

Dated:   June 13, 2011

                                                          /s/ Garrett E. Brown, Jr.
                                                         GARRETT E. BROWN, JR., U.S.D.J.

---

[1] Additionally, Defendants cite the holding of *West Interactive Corp. v. First Data Res., Inc*. to support the proposition that patentees must make contact with declaratory judgment plaintiff to support subject matter jurisdiction. (Defs.' Br. at 4; Doc. No. 28 (*citing* 972 F.2d 1295 (Fed. Cir. 1992))). However, since this case was decided prior to *MedImmune*, the court followed the reasonable apprehension test, which no longer applies. Thus, this holding is irrelevant to the Court's analysis.